# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

| | |
|---|---|
| CLIFTON JAMES RICHARDSON, SR. | CASE NO. 3:20-CV-01050 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| U. S. FEDERAL BUREAU OF INVESTIGATIONS, ET AL. | MAG. JUDGE KAYLA D. MCCLUSKY |

## <u>REPORT AND RECOMMENDATION</u>

Before the undersigned Magistrate Judge, on reference from the District Court, are the following motions: 1) motion for reconsideration [doc. # 31] and two motions for sanctions [doc. #s 38 & 44] filed by Plaintiff Clifton Richardson, Sr.; 2) motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 42] filed by Defendant, Monroe City Police Department; 3) motion to dismiss for failure to state a claim upon which relief can be granted and for judgment as a matter of law [doc. # 60] filed by Defendant, Bayou Pawn Shop; 4) motion to dismiss for lack of personal jurisdiction, for insufficiency of process, for insufficiency of service of process, and for failure to timely effect service [doc. # 63] filed by Defendant, U.S. Federal Bureau of Investigations; 5) motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 68] filed by Defendant, Walmart Stores, Inc.; and 6) a motion to dismiss for lack of subject matter jurisdiction, improper service, and for failure to state a claim upon which relief can be granted [doc. # 71] filed by Defendants, Fourth Judicial District Court and the Louisiana Department of Children & Family Services (named in the complaint, as "Child Support Payment Office").

For reasons that follow, it is ordered that Plaintiff's motions for reconsideration and sanctions are DENIED. It also is recommended that the motions to dismiss be GRANTED or

GRANTED-IN-PART, as detailed below.

## Background

### I.    Plaintiff's Complaint, Attachments, and Supporting Memorandum

On August 12, 2020, Clifton James Richardson, Sr., filed the instant complaint against

the following Defendants,

    a)  Federal Bureau of Investigations (West Virginia),

    b)  Federal Bureau of Investigations (Monroe, Louisiana),[1]

    c)  Bayou Pawn Shop,

    d)  Walmart Stores, Inc. (incorrectly sued as "Walmart Store"),

    e)  Monroe City Police Department,

    f)  Ouachita Correctional Center,

    g)  Juvenile Court for Ouachita Parish,

    h)  Louisiana Department of Children and Family Services (incorrectly sued as "Child Support Payment Office"),

    i)  Fourth Judicial District Court, and

    j)  Ouachita Parish Sheriff's Department.

(Complaint).

Richardson invoked the court's federal question jurisdiction pursuant to 28 U.S.C. §§

1331 and 1346 to assert claims against the FBI under the Federal Tort Claims Act (the "FTCA"),

---

[1] Although the Federal Bureau of Investigations has multiple offices and divisions, there is but one overall agency.  In other words, the West Virginia and Monroe locations of the Federal Bureau of Investigations represent the same entity, which the court will refer to collectively as the "FBI."

28 U.S.C. §§ 2671, *et seq*., for breach of contract or quasi-contract for failure to provide a "rap sheet," and for delay/denial of a firearm purchase(s), ostensibly in violation of 18 U.S.C. § 922(s).[2]  Plaintiff also asked the court to exercise supplemental jurisdiction, 28 U.S.C. § 1367, over unspecified state law claims.

From what the court may gather from Richardson's complaint, and the attachments thereto,[3] on an unspecified date prior to March 7, 2019, Richardson attempted to purchase a firearm at Bayou Pawn Shop, Monroe, Louisiana, but the purchase was denied or delayed.  *See* March 7, 2019, Letter from C. Richardson to FBI CJIS Division; Compl., Exh. [doc. # 1-1, pg. 6].  In his March 7, 2019 letter to the FBI, Richardson requested a copy of his FBI "rap sheet," so he could see whether there was something on it that he needed to challenge.  *Id*.  He enclosed $18.00 to cover the cost.  *Id*.[4]  He further explained in his letter that an unspecified "FBI Report" showed two 1969 robbery convictions in Ouachita Parish, Louisiana, which resulted in commitment to the Ouachita Correctional Center.  *Id*.  He added that his birth name was Clifton James Wright, which he legally changed in 1977.  *Id*.  He surmised that this was a possible

---

[2] In the complaint and in his various responses to pending motions, Plaintiff, at times, also invoked the "SPEECH Act," which is an acronym for the Securing the Protection of our Enduring and Established Constitutional Heritage Act, 28 U.S.C. § 4101, *et seq*.  *See, e.g.*, doc. #s 1, 65.

[3] Insofar as there is a conflict between the allegations in the pleading and exhibits thereto, the exhibits control.  *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir.2004) (citation omitted).

[4] "Each written request for production of an identification record must be accompanied by a fee of $18 in the form of a certified check or money order, payable to the Treasury of the United States."  28 C.F.R. § 16.33.
    Plaintiff attached a copy of a March 7, 2019, money order for $18.00 that was addressed to the FBI CJIS Division.  (Compl., Exh. [doc. # 1-1, pg. 13]).

identity theft case because he was born in 1953.  *Id*.  He also questioned two purported

"Louisiana Child Protection Act notices" that appeared on his Louisiana State Police Rap Sheet.

*Id*.

     On April 16, 2019, the FBI wrote to Richardson regarding his Request for/or Challenge

to the Reasons(s) for Firearm-Related Denial, which he apparently had submitted on April 15,

2019.  *See* Apr. 16, 2019, Letter from FBI to Richardson; Compl., Exh. [doc. # 1-1, pg. 7].  The

FBI explained that Richardson's NTN and/or STN that he provided was invalid or had been

purged because it had exceeded the agency's retention requirement of 88 days.  *Id*.  The FBI

advised Richardson to contact the Federal Firearms Licensee or the agency that conducted his

firearm-related check to obtain the correct NTN and/or STN.  *Id*.

     On April 18, 2019, the FBI further advised Richardson that his request for a copy of his

Identity History Summary, i.e., his rap sheet, was invalid because it was missing the fingerprint

card.  (April 18, 2019, Letter from FBI to C. Richardson; Compl., Exh. [doc.# 1-1, pg. 10]).  To

avoid delay in processing the claim, the FBI advised Richardson to resubmit the requested

information to the address provided in the letter within the next 180 days.  *Id*.

     On May 1, 2019, Richardson again wrote to the FBI to request a copy of his rap sheet and

included another $18.00.  (May 1, 2019, Letter from C. Richardson to FBI; Compl., Exh. [doc. #

1-1, pg. 8]).  He stated in his letter that his FBI rap sheet listed two robbery convictions from

1969.  *Id*.[5]  He added that he was a United States citizen, that the Town of Richwood where he

had lived when he was younger included Mexican citizens, and, therefore, it was possible that

---

[5] Richardson did not explain how he knew that his FBI rap sheet contained two robbery
convictions when he had yet to receive a copy of his FBI rap sheet.  Perhaps he had seen his FBI
rap sheet in the past.

the Mexican citizens were convicted in his name. *Id.* He explained that this was error. *Id.*

The May 1, 2019, letter did not indicate that Richardson included a copy of his fingerprints, as the FBI had requested. However, Richardson attached webpage printouts from his bank to show that on May 15, 2019, $18 was drafted from his account twice. (JP Morgan Chase Printouts; Compl., Exh. [doc. # 1-1, pg., 12]).

Richardson also attached to his complaint a copy of a receipt, purportedly from Walmart, which documented his purchase of a shotgun and ammunition on August 12, 2019. (Compl., Exh. [doc. # 1-1, pg. 9]). According to Plaintiff, he began the shotgun purchase process on July 20, 2019, but was unable to complete the purchase until August 12, 2019. *Id.* Elsewhere on the paper, however, someone handwrote that the "App date" was 8-2-19, and then "proceed – 8-4-19." *Id.*

Finally, Plaintiff attached to his complaint copies of two "rap sheets" apparently provided by the State of Louisiana or the Louisiana State Police. (Compl., Exhs. [doc. #s 1-1, pgs. 2-4]). One of the rap sheets was dated January 23, 2019, and listed "application[s]" from the Child Protection Act in 1989 and 2008, an "application" from the Louisiana Department of Public Safety in 1995, and an "application" from the Louisiana Board of Private Security Examiners. *Id.* Also, in January 17, 2019, there was a "Louisiana State Police Criminal Identification and Information Application." *Id.* The rap sheet revealed that Richardson was arrested in April and September 1989 on several charges. *Id.* Moreover, on May 16, 1989, Richardson signed a waiver and paid a fine of $250 on a charge of simple battery. *Id.*[6]

---

[6] The second rap sheet suggests that it was printed on July 14, 2008, and included the same information as the other rap sheet – at least up until the date the report was run. *Id.*

5

In his prayer for relief, Plaintiff requested a copy of his FBI rap sheet, or the return of his three $18.00 fee submissions that he had paid in his attempt to receive the rap sheet. (Compl.). He also sought an injunction to cease distribution of the two robbery convictions, plus the two child protection act announcements that appeared on the state police rap sheet. *Id*. He further requested "private relief" to compensate him for lost employment benefits because of his incorrect background check information. *Id*. His estimated damages included lost teacher's pay of $26,000 per year x 20 years, plus $10 million term insurance benefits; and state police pay of $85,000 x 20 years, plus $10 million term insurance benefits. *Id*. He asserted that these damages should be trebled if the violations constituted negligence per se. *Id*.

On August 25, 2020, Plaintiff filed a document entitled, "Memorandum in Support of Complaint," wherein he further detailed his claims. (Pl. Memo. [doc. # 7]). He explained that Defendants, Bayou Pawn Shop and Walmart Store, "denied/delayed" his purchases of firearms. *Id*. He asserted that the Monroe FBI "made the arrest in year 1969 for the Monroe Police Department." *Id*. He further asserted that the FBI rap sheet identified him as "being dispositioned to the Ouachita Correctional Center when he was a juvenile. *Id*. According to Plaintiff, however, only "Foreign Juveniles" are received in "Adult Prison Systems." *Id*. Consequently, the Ouachita Correctional Center violated the due process clause of the United States Constitution. *Id*.

Plaintiff stated that the United States Supreme Court had jurisdiction over this civil action because two felony robbery convictions on a United States citizen in Monroe, Louisiana should have been prosecuted by either Defendant, Juvenile Court, or Defendant, Fourth Judicial District Court. *Id*. Accordingly, Plaintiff asked that this case be transferred to the United States District

Court on Jackson Street, Monroe, Louisiana (i.e., the forum where he filed this case and where it is presently pending).  *Id*.

Plaintiff further asserted that if the two felony robbery convictions did not entail U.S. citizens, then the SPEECH Act "does governing [sic] Prosecutions of the Foreign Alliance, who are here visiting their relatives, who are International Police for the United States."  *Id*.  Plaintiff added that because he was a U.S. citizen, and this matter was an error committed by the FBI when it arrested juveniles in 1969, or an error by the Ouachita Correctional Center, who received the juveniles in 1969, these Defendants should be interpleaded and required to determine who was responsible for the error.  *Id*.  Plaintiff maintained that he did not go to the Ouachita Correctional Center.  *Id*.

Plaintiff added that the state police rap sheet proved the existence of the FBI report.  *Id*. He reemphasized that he paid the necessary fees to obtain the rap sheet, but failed to receive it. *Id*.  Furthermore, the Sheriff's office denied that the fingerprints were incorrect.  *Id*.  Plaintiff explained that the FBI rap sheet listed two felony robbery convictions which barred his two employment opportunities.  *Id*.  Plaintiff further alleged that Defendants, Monroe City Police Department and Child Support Payment Office, were both possible reasons for the Louisiana Child Protection Act being listed on the state police rap sheet.  *Id*.

Plaintiff also asserted that Defendants, the FBI, and the Sheriff's Office should be interpleaded to determine what was wrong with his fingerprints.  *Id*.  According to Plaintiff, he sent his fingerprints to the FBI twice, but the FBI said that the prints were inaccurate.  *Id*.  The Sheriff's Office maintained that they were accurate.  *Id*.

Plaintiff also claimed that the Fourth Judicial Court did not have the public records for

his two robbery convictions that appear on his FBI rap sheet. *Id*. Therefore, he reasoned that if the courts did not "prosecute [his] name and Social Security Number, then these Prosecutions should not be recognized." *Id*.

## II.    Post-Complaint Activity

   a)    Service Efforts and Default Requests

In August-September 2020, Plaintiff commenced his efforts to serve Defendants via certified mail. On September 21, 2020, he filed various certified mail receipts with the Clerk of Court. *See* doc. # 15. However, the Clerk of Court noted that the summonses were returned unexecuted as to Defendants in the case because service of parties who reside within the State of Louisiana cannot be perfected via certified mail. *Id*. Plaintiff also included certified mail receipts to support service upon the United States District Court, the United States Attorney, the Louisiana Attorney General, Governor John Bel Edwards, and the Louisiana Secretary of State. *Id*. However, the Clerk of Court noted that these entities/officeholders were not parties to the suit.

On September 21, 2020, Plaintiff filed a waiver of service form that was executed by the City of Monroe/Monroe Police Department. [doc. # 16]. Plaintiff also filed certified mail receipts evidencing mailings to the FBI in Clarksburg, West Virginia, and to the U.S. Attorney General, which the latter purportedly received on August 21, 2020. [doc. # 17].

On September 28, 2020, Plaintiff filed a copy of a letter dated September 24, 2020, that he sent to Mr. Kyle Ardoin, Louisiana Secretary of State, wherein he noted that he forgot to include the summonses that had to accompany the complaint to be served on each party. [doc. # 18]. Plaintiff included a $50 money order made out to the Secretary of State and asked him to

identify the agent for service of process for each Defendant in this suit, and to include a summons with each complaint. *Id*.

On September 30, 2020, Plaintiff filed a certified mail receipt showing an unspecified mailing to the Louisiana Attorney General, which was received on September 11, 2020. [doc. # 19]. The Clerk of Court noted that the Louisiana Attorney General was not a party to this case. *Id*.

On October 23, 2020, Plaintiff submitted a request for Clerk's entry of default as to all Defendants who had not filed answers because their alleged collective agent for service of process, the Louisiana Secretary of State, had signed the certified mail receipts. [doc. # 20].

On October 26, 2020, Plaintiff filed certified mail receipts reflecting that the Secretary of State had received unspecified mailings from Plaintiff on September 21, 2020, and on another unknown date. [doc. # 22].

Also on October 26, 2020, Plaintiff filed a copy of a letter dated October 19, 2020, that he sent to the U.S. Attorney at 201 Jackson Street, Monroe, Louisiana, wherein he asked the U.S. Attorney to serve the FBI of Monroe, Louisiana on his behalf. [doc. # 25]. Plaintiff included a cashier's check for $50 to cover the cost. *Id*. Plaintiff attached numerous certified mail receipts to the letter, plus a letter dated September 14, 2020, that he had received from the Louisiana Secretary of State (the "SOS") informing him that the SOS was not the agent for service of process for the following entities: FBI of West Virginia, the Monroe FBI, the Monroe Police Department, Ouachita Correctional, Juvenile Court, Child Support Office, 4th Judicial District Court, and the Sheriff's Department. [doc. # 25-2, pg. 1]. Furthermore, insofar as Plaintiff desired to serve Bayou Pawn Shop and Walmart Store, the SOS advised him that he needed to

specify that service be effected "through the Louisiana Secretary of State." *Id*. Plaintiff also had to provide $50 for both of these parties to cover the fees for service. *Id*.

On October 27, 2020, the Clerk of Court entered default against Defendant, City of Monroe Police Department. [doc. # 21]. The Clerk noted that default was unavailable for the FBI because the FBI's answer was not due until November 9, 2020. *Id*. In addition, the Clerk terminated Plaintiff's request for default as to other parties because proof of service had not been submitted to the court. [doc. #s 23-24].

Between October 28-29, 2020, Defendant, Monroe Police Department, petitioned for, and obtained court approval to set aside the Clerk's entry of default. [doc. #s 26-28].

On November 6, 2020, Defendant, the FBI, filed a motion for extension of time to file a responsive pleading. [doc. # 29]. In its motion, the government noted that the court's docket sheet reflected that its answer was due on November 9, 2020. *Id*. However, the government remarked that service did not appear to be proper. *Id*. The court granted the motion and extended the due date for the FBI's responsive pleading until December 9, 2020. [doc. # 30].

     b)    <u>Plaintiff's Motion for Reconsideration</u>

On November 9, 2020, Plaintiff filed a "Rule 46 objection" to the Clerk of Court's refusal to enter default against certain Defendants on the grounds that service via certified mail was ineffective. [doc. # 31]. The Clerk of Court docketed the filing as a motion for reconsideration and referred the matter to the assigned magistrate judge. [doc. #s 31-32]. Defendant, Walmart Stores, Inc., filed an opposition to the motion whereby it asserted that it did not receive a copy of the complaint and summons from the Secretary of State until November 10, 2020. [doc. # 41].

c)    Plaintiff's First Motion for Sanctions

On November 23, 2020, Plaintiff filed a motion for sanctions under Rule 11(b) against any and all Defendants who had failed to execute waivers of service.  [doc. # 38]. [7]

d)    Monroe Police Department's Motion to Dismiss

On November 30, 2020, in what turned out to be the first salvo in a barrage of Rule 12(b) motions filed by various Defendants, the Monroe Police Department filed a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.  [doc. # 42].[8]  Defendant urged dismissal on several grounds:  1) the Monroe Police Department lacked the capacity to be sued; 2) Plaintiff was not entitled to relief under 18 U.S.C. § 925A; 3) Plaintiff was unable to recover against Defendant under the FTCA or the Little Tucker Act; 4) any state law claims were untimely; and 5) Plaintiff could not show that Defendant breached any duty owed to him.  *Id*.

Plaintiff filed his opposition to the Monroe Police Department's motion to dismiss on December 9, 2020.  [doc. # 49].  Amidst, a raft of largely incomprehensible arguments, he asserted that under 18 U.S.C. § 922(s), the chief law enforcement officers for the police and sheriff were responsible for the decision for each firearm purchase.  *Id*.  He also clarified that his complaint did not name any Defendant as being the entity liable for his damages for lost wages.  *Id*.  He further suggested that federal law superseded state statutes of limitation.  *Id*.

The Monroe Police Department filed its reply on December 16, 2020.  [doc. # 56].

---

[7] On November 12, 2020, Plaintiff filed additional certified mail receipts that were addressed to the Secretary of State, the FBI, the National Archives, and the President of the Police Jury.  [doc. # 33].

[8] In its memorandum, the Monroe Police Department admitted that by searching its records using Plaintiff's former name, Clifton J. Wright, it was able to find a 1969 felony armed robbery *arrest*.  (Def. Memo, pg. 1 n.1).

11

Defendant noted, *inter alia*, that, by its terms, 18 U.S.C. § 922(s) was only operative for up to five years after its 1993 enactment as a component of the Brady Handgun Violence Prevention Act. *Id*. As a result, Plaintiff was unable to rely on a long-expired interim provision of the legislation in an attempt to show that the Monroe Police Department had denied his handgun purchase, when background checks now are processed through the national instant criminal background check system at the federal level. *Id*.

   e)  <u>Plaintiff's Second Motion for Sanctions</u>

  On November 30, 2020, Plaintiff filed a second motion for Rule 11(b) sanctions wherein he again sought to assess costs of service against any and all Defendants who had failed to waive service. [doc. # 44]. The Monroe Police Department filed an opposition to both motions for sanctions on December 14, 2020. [doc. # 53]. Defendant, Walmart Stores, Inc., also filed its opposition that same date. [doc. # 54]. On December 29, 2020, Defendant, Bayou Pawn Shop, filed an opposition wherein it noted that sanctions were unavailable under Rule 11 for failure to waive service, and in any event, it had filed an answer on December 11, 2020. *See* doc. #s 52 & 59.

   f)  <u>Bayou Pawn Shop's Motion to Dismiss</u>

  On December 29, 2020, Defendant, Bayou Pawn Shop, filed a combined motion to dismiss for failure to state a claim upon which relief can be granted and motion for judgment on the pleadings. [doc. # 60]. Defendant argued that it was not liable for any delay or denial of Plaintiff's attempt to purchase a firearm because, as a licensed firearms dealer, it was not responsible for any information that it may have received from the federal government. Furthermore, Plaintiff never actually alleged that Bayou Pawn Shop denied his firearms

purchase, and thus, Plaintiff had no remedy under 18 U.S.C. § 925A.  Finally, Defendant argued that Plaintiff's claims were untimely because any attempted purchase from Defendant necessarily preceded March 7, 2019, (when Plaintiff wrote to the FBI inquiring about the denial), which was more than one year before he filed suit.

On January 14, 2021, Plaintiff filed his Rule 46 objection to Bayou Pawn Shop's motion to dismiss, wherein he reiterated that he did not intend to receive any money damages from any Defendant in the case under 18 U.S.C. § 922(t)(6).  [doc. # 66].  He further asserted that his claims were not time-barred because the continuing violation doctrine and fraud upon the court tolled the limitations period.  *Id*.  Plaintiff stated that Bayou Pawn Shop was required by law to provide him with background reports regarding the firearm purchase denial/delay.  *Id*.  He maintained that he was entitled to relief under 18 U.S.C. § 922(s)(5)-(6), and that Defendant was required to provide him with responsive information in its Rule 26 initial disclosures.  *Id*.

**Plaintiff plainly acknowledged that 18 U.S.C. § 925A did not apply in this case**.  *Id*.  He again emphasized that he was not seeking damages against any Defendant in the case.  *Id*.  He also referenced, without elaboration, the "State Sovereign Immunity" doctrine, *Ex Parte Young*, and the "arm of the state" doctrine.  *Id*.

g)    FBI's Motion to Dismiss

On January 9, 2021, the FBI filed a motion to dismiss Plaintiff's claims for lack of personal jurisdiction, insufficiency of process, insufficiency of service of process, and for failure to timely effect service.  [doc. # 63].  The FBI asserted that the record was "void of the issuance of summonses and service of summonses and the complaint on the U.S. Attorney General and

13

the U.S. Attorney." (Def. Memo., pg. 1).[9]  Furthermore, the government stated that, in a

December 10, 2020, letter, it had advised Plaintiff of his deficient service attempts and detailed

precisely what he needed to do correct them.  *Id*.; *see also* Dec. 10, 2020, Letter from K. King to

C. Richardson; M/Dismiss, Exh. A.  Nonetheless, Plaintiff failed to do so.  Because of the

improper service, the government asserted that the court lacked personal jurisdiction to entertain

the suit against the FBI.  The government further argued that Plaintiff's claims against the FBI

should be dismissed because Plaintiff failed to perfect service within 90 days after suit was filed.

On January 29, 2021, Plaintiff filed his Rule 46 objection to the FBI's motion to dismiss,

wherein he represented that he had sent the summonses and the complaint.  [doc. # 69].  He

seemed to argue that because the Attorney General and the U.S. Attorney represent the FBI, a

party to this suit, they could not be the agent for service of process.  *Id*.  Consequently, that left

only the Secretary of State to sign and file the proof the service.  *Id*.  Plaintiff further noted that

Defendant failed to waive service and cited his attempts to have the proper person serve the

Secretary of State's office.  *Id*.  He emphasized that he attempted service from August 12

through November 12, 2020.  *Id*.  He also represented that he had submitted an affidavit of

service with each of his service returns.  *Id*.

On February 8, 2021, the FBI filed its reply brief in support of its motion to dismiss.

[doc. # 75].  The government pointed out that, although the return of service filed by Plaintiff on

September 21, 2020, purported to show service upon the FBI, it did not evidence service upon

---

[9] Specifically, "[t]he U.S. Attorney's Office initially received a copy of the complaint with a
request for waiver of service directed to the U.S. Attorney General.  Subsequently, the U.S.
Attorney's Office received a copy of the summonses directed to all named defendants.  The U.S.
Attorney General has not received service."  *Id*., n.1.

the U.S. Attorney General.  *Id*.  The government added that the address on the second green card was the address for the D.C. Mayor and D.C. governmental agencies.  *Id*.  Regardless, the address did not reflect service upon the U.S. Department of Justice or the U.S. Attorney General. *Id*.  Insofar as Plaintiff wanted the FBI to disclose the right person for him to serve, the government emphasized that it already had done so in its December 2020 letter to Plaintiff.  *Id*.

      h)    <u>Walmart's Motion to Dismiss</u>

On February 1, 2021, Defendant, Walmart Stores, Inc., filed a Rule 12(b)(6) motion to dismiss Plaintiff's complaint on the grounds that 1) the federal laws cited by Plaintiff did not provide a remedy, 2) the claims were untimely, and/or 3) Plaintiff failed to state a claim for relief under state law.  [doc. # 68].

On February 25, 2020, Plaintiff filed two Rule 46 objections to the motion to dismiss filed by Walmart Stores, Inc.  [doc. #s 78-79].  Plaintiff argued that under 18 U.S.C. § 922(s)-(t), Walmart had between five and twenty days in which to provide him with a copy of the report from the "chief law enforcement officer."  [doc. # 78].  Plaintiff denied that any Defendant was liable for money damages.  *Id*.  Rather, his accumulated damages were so the court and the State's citizens could consider how much he had been harmed by the report's distribution since 1969.  *Id*.  He asserted that Defendant's action violated the SPEECH Act if it enforced this "foreign prosecution."  *Id*.  Accordingly, Plaintiff prayed that the court would order Walmart to provide Plaintiff with a copy of the report that it received regarding his alleged criminal activity. *Id*.  Plaintiff again emphasized that no damages were sought from any Defendant in the case.  *Id*.

In his second filing in opposition to Walmart's motion, Plaintiff conceded that the FBI returned one of the three $18 money orders that he had sent them.  [doc. # 79].  He also asserted

that Walmart received orders from the chief law enforcement officer. *Id.* Plaintiff argued that the statute of limitations on his claims was tolled because fraud upon the court had been committed as a result of his FBI rap sheet that listed Plaintiff as a convicted robber. *Id.* He further argued that the continuing violations doctrine applied to toll the limitations period because a federal law was violated many times. *Id.* Plaintiff added that the FBI report's robbery conviction was not in the Fourth Judicial Court's records. *Id.* Finally, he urged the court to enjoin itself from using any foreign court's judgment pursuant to the SPEECH Act. *Id.*

Walmart filed its reply brief on March 8, 2021. [doc. 82].

i)  Fourth Judicial District Court and the Louisiana Department of Children and Family Service's Motion to Dismiss

On February 2, 2021, Defendants, Fourth Judicial District Court (initially sued as "Fourth Judicial District Court Clerk of Court") (hereinafter, "4th JDC") and the Louisiana Department of Children & Family Services (incorrectly sued as, "Child Support Payment Office") (hereinafter, "DCFS"), filed a motion seeking dismissal of Plaintiff's claims because:  1) he failed to properly serve both Defendants; 2) Defendant, 4th JDC, was not a juridical entity capable of being sued; and 3) the Eleventh Amendment barred Plaintiff's claims against both Defendants. [doc. # 71].

On February 25, 2020, Plaintiff filed his Rule 46 objection to the 4th JDC and DCFS's motion to dismiss. [doc. # 80]. He asserted that he served both Defendants via the mayor, who effected a waiver. *Id.* (citing doc. # 31). If service was "wrong," Plaintiff stated that the court could order service. *Id.* Plaintiff argued that the 4th JDC and the DCFS were "instruments" of the state. *Id.* Finally, Plaintiff added that Defendants' Eleventh Amendment immunity was abrogated by the Federal Tort Claims Act and the Little Tucker Act. *Id.*

On March 10, 2021, Defendants, 4th JDC and DCFS, filed their reply brief. [doc. # 84].

16

The motions are fully briefed; the matter is ripe.

**<u>Analysis</u>**

## I.     Insufficient Process and/or Insufficient Service of Process

Defendants, FBI, 4th JDC, and DCFS, seek dismissal of Plaintiff's claims against them for insufficient process and/or for insufficient service of process. FED. R. CIV. P. 12(b)(4) & (5). Although Rules 12(b)(4) and 12(b)(5) sound similar, there is a distinction. "An objection under Rule 12(b)(4) concerns the form of the process rather than the manner or method of its service, while a Rule 12(b)(5) motion challenges the mode of delivery or the lack of delivery of the summons and complaint." *Gartin v. Par Pharm. Companies, Inc.*, 289 Fed. App'x. 688, 692 (5th Cir. 2008) (quoting 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 1353) (internal quotation marks omitted). Therefore, "a Rule 12(b)(4) motion is proper only to challenge noncompliance with the provisions of Rule 4(b) or any applicable provision incorporated by Rule 4(b) that deals specifically with the content of the summons." FED. PRACTICE AND PROCEDURE, *supra*. *Id.*[10]

When service is challenged, the serving party bears the burden of proving its validity or good cause for failure to effect timely service. *Kitchen v. Walk-On's Bistreaux & Bar*, No. 19-1062, 2020 WL 2404911, at *3 (W.D. La. May 12, 2020) (citing *Sys. Signs Supplies v. U.S. Dep't of Justice, Washington, D.C.*, 903 F.2d 1011, 1013 (5th Cir. 1990)). "The Court may consider affidavits or declarations in resolving Rule 12(b)(5) motions." *Walk-On's*, 2020 WL

---

[10] Rule 12(b)(4) also is the proper challenge when the respondent alleges that the summons and complaint do not properly name the party on whom the summons and complaint were served. *International Fire and Safety, Inc. v. HC Services, Inc.*, Civ. Action No. 2:06cv63 KS-MTP, 2006 WL 2403496 (S.D. Miss. Aug. 18, 2006).

2404911, at *1 (citations omitted).  Without valid service of process, "proceedings against a party are void because a court cannot exercise personal jurisdiction over a defendant unless he was properly served." *Landry v. Garber*, No. 19-0367, 2019 WL 2946149, at *2 (W.D. La. June 21, 2019), *R&R adopted*, No. 19-0367, 2019 WL 2943409 (W.D. La. July 8, 2019) (citing *Aetna Business Credit, Inc. v. Universal Décor & Interior Design, Inc*., 635 F.2d 434, 435 (5th Cir. 1981)); *see also Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co*., 484 U.S. 97, 104 (1987).

        a)    <u>FBI</u>

       Rule 4(i) of the Federal Rules of Civil Procedure provides that,

**(i) Serving the United States and Its Agencies, Corporations, Officers, or Employees.**
    **(1) United States**. To serve the United States, a party must:

> (A)(i) deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought--or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk--or
>
> (ii) send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office;
>
> (B) send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.; and
>
> (C) if the action challenges an order of a nonparty agency or officer of the United States, send a copy of each by registered or certified mail to the agency or officer.

    **(2) *Agency; Corporation; Officer or Employee Sued in an Official Capacity.*** To serve a United States agency or corporation, or a United States officer or employee sued only in an official capacity, a party must serve the United States and also send a copy of the summons and of the complaint by registered or certified mail to the agency, corporation, officer, or employee.

Fᴇᴅ. R. Cɪᴠ. P. 4(i)(1) & (2).

In other words, at minimum, Plaintiff must send, via registered or certified mail, a copy of the summons and the complaint to the local U.S. Attorney, the U.S. Attorney General, and the FBI.

*McAfee v. U.S. Dep't of Veterans Affairs*, No. 19-4320, 2020 WL 1046111, at *1 (S.D. Tex. Mar. 4, 2020).

In its motion to dismiss, the government asserted that Plaintiff failed to serve either the U.S. Attorney or the Attorney General of the United States with copies of the complaint and the summonses. The government acknowledged that, although Plaintiff filed a copy of a certified mail receipt that was addressed to the U.S. Attorney General at 441 4th Street, NW, Washington, D.C. 20001, *see* doc. # 17, that is not the correct address for the Attorney General.

In the wake of the government's motion to dismiss, Plaintiff filed a copy of a certified mail receipt showing that on January 21, 2021, someone signed for certified mail that was properly addressed to the U.S. Attorney General. *See* doc. # 73. However, there is no indication that, in response to the present motions to dismiss, or when Plaintiff filed his multitude of certified return receipts for the various parties (and non-parties) in this case, that he ever provided supporting affidavits to show precisely what each of these mailings entailed. *See, e.g., System Signs Supplies, supra* (record merely contained service documentation, without supporting affidavits). In fact, Plaintiff could not have served the U.S. Attorney General and the U.S. Attorney for this district with summonses because, from what the court is able to discern, summonses were never issued for the U.S. Attorney General and the U.S. Attorney. *See* doc. # 9.[11]

---

[11] Under Federal Rule of Civil Procedure 4(c)(1), "[a] summons must be served with a copy of the complaint." Fed. R. Civ. P. 4(c)(1). Serving the summons or a copy of the complaint, without the other, renders service invalid. *See Walk-On's, supra; Styles v. McDonalds Rest.*, No. 17-0791, 2019 WL 2266636, at *3–4 (E.D. Tex. Jan. 28, 2019), *R&R adopted*, 2019 WL 1219117 (E.D. Tex. Mar. 15, 2019); *see also Aerielle Techs., Inc. v. Procare Int'l Co.*, No. 08-0284, 2011 WL 767775, at *2 (E.D. Tex. Feb. 28, 2011) (citation omitted) ("Although strict conformity with Rule 4's provisions is not required in every instance . . . actual receipt of both

In short, Plaintiff has not satisfied his burden to show that he properly served Defendant, the FBI.  *See* doc. # 9.

      b)    <u>State and Local Government Entities</u>

A plaintiff may effect service on a state or local governmental entity by "delivering a copy of the summons and of the complaint to its chief executive officer; or . . . serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant."  FED. R. CIV. P. 4(j)(2)(A)-(B).  Under Louisiana law, service on any political entity can be "made at its office by personal service upon the chief executive officer thereof, or in his absence upon any employee thereof of suitable age and discretion."  LA. C. CIV. P. ART. 1265.

In this case, Plaintiff failed to perfect service upon movants, DCFS and 4th JDC, or any other local government entity in this case, via either method authorized by Rule 4.  Instead, Plaintiff purported to serve DCFS, 4th JDC, and the other local government entities via certified mail, which he apparently mailed to the mayor for the City of Monroe.  *See* doc. # 15.   It is manifest, however, that service of a resident/in-state party by certified mail does not comport with Louisiana or Federal Law.  *Able Sec. & Patrol, LLC v. Louisiana ex rel. Dep't of Pub. Safety & Corr.*, No. 07-1931, 2008 WL 3539693, at *2–3 (E.D. La. July 30, 2008); *Allen v. Louisiana Sch. for Deaf Louisiana Dep't of Educ.*, No. 07-957, 2008 WL 11417774, at *2 (M.D. La. May 27, 2008); *Seal v. State of La.*, No. 05-629, 2005 WL 3543836, at *2 (E.D. La. Oct. 18, 2005).[12]  Further, the mayor of Monroe is not calculated to be the chief executive officer for the

the summons and the complaint is a base requirement.")).

[12] Insofar as Plaintiff endeavored to serve any of the Defendant local or state agencies via the Louisiana Attorney General or the district attorney as provided by Louisiana Revised Statute § 13:5107, such attempts must be perfected in-person and not via certified mail.  *See* La. C. Civ. P. Art. 1265.

DCFS, the 4th JDC, or any other government/state entity in this suit.[13]  Also, the Louisiana

Secretary of State is not the agent for service of process of these entities.  *See* Sept. 14, 2020,

Letter from Sec. of State to C. Richardson [doc. # 25-2, pg. 1].

In sum, Plaintiff has not satisfied his burden to show that he properly served Defendants,

DCFS and 4th JDC, or for that matter, Ouachita Correctional Center, Juvenile Court for Ouachita

Parish, and the Ouachita Parish Sheriff's Department.[14]

     c)    <u>Remedy for Improper Service</u>

Pursuant to Federal Rule of Civil Procedure 4(c)(1), "[t]he plaintiff is responsible for

having the summons and complaint served within the time allowed by Rule 4(m)."  FED. R. CIV.

PROC. 4(c)(1).  Under Federal Rule of Civil Procedure 4(m), "[i]f a defendant is not served

within 90 days after the complaint is filed, the court . . . must dismiss the action without

prejudice against that defendant or order that service be made within a specified time."  FED. R.

CIV. P. 4(m).  However, "if the plaintiff shows good cause for the failure, the court must extend

the time for service for an appropriate period."  *Id.*  Good cause "requires 'at least as much as

would be required to show excusable neglect, as to which simple inadvertence or mistake of

counsel or ignorance of the rules usually does not suffice.'"  *Gartin v. Par Pharm. Companies,

Inc.*, 289 Fed. App'x 688, 692 (5th Cir. 2008) (quoting *Lambert v. United States*, 44 F.3d 296,

299 (5th Cir. 1995)).  Furthermore, "[a] litigant's pro se status neither excuses his failure to

---

[13] Defendant, Monroe City Police Department, is the only possible exception to the foregoing statement.  However, it executed a waiver of service, and, in any event, is not an entity capable of being sued.  *See* discussion, *infra*.

[14] However, the court is recommending dismissal of these latter Defendants on the basis that they are not entities capable of being sued.  *See* discussion, *infra*.

effect service nor excuses him for lack of knowledge of the Rules of Civil Procedure." *Thrasher v. City of Amarillo*, 709 F.3d 509, 512 (5th Cir. 2013) (citations omitted).

Here, Plaintiff's repeated failures to timely and properly serve Defendants are inexcusable at this point. The Clerk of Court, the Louisiana Secretary of State, and the United States all notified him of his deficient service efforts prior to the instant motion practice. In fact, Plaintiff filed a prior suit with this court in 2008 that was plagued by similar service issues. *See Richardson v. Manning*, No. 08-0937 (W.D. La.). Furthermore, even after Defendants filed the instant motions to dismiss, which specifically alerted Plaintiff to his insufficient service attempts, there is no evidence that he redressed these issues by properly serving Defendants.

Plaintiff also has not presented evidence of circumstances to warrant further extension. Accordingly, dismissal is warranted. *See Thrasher, supra* (court properly dismissed suit after it warned plaintiff and granted her generous extensions of time, but plaintiff still failed to effect service properly); *Walk-On's supra* (no basis to confer additional time to pro se plaintiff to effect service after eight months had passed since suit was filed); *McDonald v. United States*, 898 F.2d 466, 468 (5th Cir.1990) (ignorance of the rules of proper service does not constitute good cause to extend the service period); *Systems Signs Supplies* (defendants' actual notice of suit, plus plaintiff's pro se status did not excuse plaintiff's failure to properly serve defendants where plaintiff had been advised previously that service was defective).

"In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350; 119 S.Ct. 1322, 1327 (1999) (citation omitted). Similarly, "[b]efore a federal court may exercise personal jurisdiction over a

defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104; 108 S.Ct. 404, 409 (1987).

Here, Plaintiff has not properly served Defendants, FBI, DCFS,[15] and 4th JDC.[16]  *See* discussion, *supra*.  Accordingly, the court lacks personal jurisdiction to entertain plaintiff's claims against them.  FED. R. CIV. P. 12(b)(2).[17]

## II.    Plaintiff's Motion for Reconsideration

Plaintiff filed a motion for reconsideration of the Clerk of Court's October 27, 2020, refusal to docket entries of default against Defendants in this case.  *See* doc. #s 23-24, 31.  Entry of default, however, presupposes a defendant's failure to plead which is triggered only after proper service.  *See* FED. R. CIV. P. 12 and 55.  Here, of course, Plaintiff failed to properly serve Defendants, FBI, DCFS, 4th JDC, Ouachita Correctional Center, Juvenile Court for Ouachita

---

[15] Even if Plaintiff managed to properly serve DCFS, it would be entitled to Eleventh Amendment immunity.  *See Cummings v. Louisiana Dep't Children & Family Servs.*, No. 14-3362, 2015 WL 5015311, at *1 n.2 (W.D. La. Aug. 21, 2015) (and cases cited therein) (DCFS is an arm of the state, and therefore eligible for Eleventh Amendment protection).  The Eleventh Amendment bars suits for both money damages and injunctive relief against a state entity. *Darlak v. Bobear*, 814 F.2d 1055, 1059 (5th Cir. 1987) (citation omitted).  The Eleventh amendment also precludes state law claims brought against the State and its departments (in federal court).  *Clifton Richardson v. Southern University*, 118 F.3d 450, 453 (5th Cir. 1997).

[16] In addition, the 4th JDC is not an entity capable of being sued.  *See* discussion, *infra*.

[17] Although the dismissal of plaintiff's claims under Rules 12(b)(2), 12(b)(4), and 12(b)(5) will be without prejudice, the court recognizes that "[w]here further litigation of [a] claim will be time-barred, a dismissal without prejudice is no less severe a sanction than a dismissal with prejudice . . ."  *Berry v. CIGNA/RSI-CIGNA*, 975 F.2d 1188, 1191 (5th Cir. 1992) (quoting *McGowan v. Faulkner Concrete Pipe Co.*, 659 F.2d 554, 556 (5th Cir.1981)).  In this case, however, most all of Plaintiff's claims for money damages were time-barred even before he filed the instant suit.  *See* Defs' Motions to Dismiss.  Furthermore, with the possible exception of a claim for $36 against the FBI for unearned fees, the remainder of his claims lack merit.  *See* discussion, *infra*.

Parish, and the Ouachita Parish Sheriff's Department.  *See* discussion, *supra*.  Accordingly, default remains unavailable as to these parties.

Furthermore, while the Clerk of Court entered default against Defendant, Monroe Police Department, the court set aside the default upon Defendant's motion, and granted an extension of time to file a responsive pleading.  *See* doc. #s 26-28.  Moreover, Plaintiff did not properly serve Defendant, Walmart Stores, Inc., until November 10, 2020, *see* doc. # 34, whereupon Defendant promptly requested, and obtained an extension of time until February 1, 2021, in which to file its responsive pleading.  [doc. #s 34-35].  Thereafter, Walmart Stores, Inc. timely filed a Rule 12(b)(6) motion, which further extended its responsive pleading deadline.  *See* FED. R. CIV. P. 12(a)(4) [doc. # 68].

Finally, Defendant, Bayou Pawn Shop, eventually filed its answer to the complaint on December 11, 2020.  [doc. # 52].  As a result, default is neither available at the present time, nor warranted for the same reasons the court set aside the entry of default against the Monroe Police Department.  *See* doc. # 28.

## III.   Plaintiff's Motions for Sanctions

Plaintiff filed two motions for sanctions against Defendants for their alleged refusal to execute waivers of service under Rule 4(d).  [doc. #s 38 & 44].  In support of his motions, Plaintiff cited Rule 11(b) and 28 U.S.C. § 1369(c)(2).  However, neither of the foregoing provisions authorize sanctions for failure to execute a waiver of service.  Thus, insofar as Plaintiff intended to limit his motions solely to the foregoing authority, his request for relief is misplaced and subject to denial on the basis.

Furthermore, even if the court were to consider Plaintiff's motion under Rule 4(d) – the

24

proper source for an award of costs for failure to execute a waiver of service – the same result

obtains.  First, Rule 4(d)'s waiver mechanism only may be used against defendants that are

individuals, corporations, or associations, and not when the defendant is the United States, or a

state or local government organization.  *See* FED. R. CIV. P. 4(d)(1); *Judeh v. Louisiana State*

*Univ. Sys.*, No. 12-1758, 2013 WL 654921, at *2 (E.D. La. Feb. 20, 2013) (Rule 4(d) does not

apply to parties subject to service under Rule 4(j)).  Therefore, the only Defendants subject to

Rule 4(d)'s waiver requirements in this case are Walmart Stores, Inc., and Bayou Pawn Shop.

Under Rule 4, any defendant that fails to comply with a request for waiver is, in the

absence of good cause, subject to the imposition of expenses subsequently incurred to effect

service.  FED. R. CIV. P. 4(d)(2).  However, it is plaintiff's burden to show that he complied with

Rule 4's waiver provisions.  *Judeh, supra*.  Here, Plaintiff has not shown that he mailed

Defendants a copy of the complaint, two copies of the waiver form, and a prepaid means for

returning the form.  *See* FED. R. CIV. P. 4(d)(1).  Certainly, a certified mail receipt without any

details regarding the documents delivered does not suffice.  *Judeh, supra* (citation omitted).

Under these circumstances, an award of costs and/or sanctions is neither available, nor

warranted.  *See Flores v. Sch. Bd. of DeSoto Par.*, 116 Fed. App'x. 504, 508 (5th Cir. 2004)

(faulty service in combination with no proof that plaintiff actually submitted the proper forms to

defendant justifies denial of costs); *Suggs v. Cent. Oil of Baton Rouge, LLC*, No. 13-25, 2014

WL 3374719, at *2 (M.D. La. July 9, 2014) (costs denied where there was nothing to show that

request for waiver was sent or received).

## IV. Motions to Dismiss for Failure to State a Claim upon Which Relief Can Be Granted

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state

a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  A pleading states a claim for relief, *inter alia*, when it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ." FED. R. CIV. P. 8(a)(2).[18]

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)).  "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim=s Pride Corp.*, 632 F.3d 148 (5th Cir. 2010).

A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly, supra*.  Nevertheless, a court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).  Furthermore, "a complaint may be dismissed if it clearly lacks merit—for example, where there is an absence of law to support a claim of the sort made." *Thurman v. Med. Transp. Mgmt., Inc.*, 982 F.3d 953, 956 (5th Cir.2020) (citations and internal quotation marks omitted).

a)     Capacity to be Sued

Defendants, Monroe Police Department and 4th JDC,[19] contend that Plaintiff's claims

---

[18] Defendant, Bayou Pawn Shop, also filed a Rule 12(c) motion for judgment on the pleadings. However, courts apply the same Rule 12(b)(6) analysis to Rule 12(c) motions. *See Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir.2004).

[19] The court already has determined that Plaintiff's claims against the 4th JDC are subject to dismissal for failure to timely perfect service. *See* discussion, *supra*.  Accordingly, this alternative basis for dismissal only serves to illustrate the futility of further service attempts.

against them are subject to dismissal because these entities lack the capacity to be sued.  The

court observes that although Rule 12(b) does not specifically authorize a motion to dismiss based

on a lack of capacity to be sued, "[f]ederal courts . . . traditionally have entertained certain pre-

answer motions that are not expressly provided for by the rules or by statutes" including motions

raising a lack of capacity to sue or be sued.  *Clark v. Lafayette Police Dep't*, No. 18-0058, 2018

WL 3357899, at *1 (W.D. La. June 22, 2018), *R&R adopted*, 2018 WL 3357257 (W.D. La. July

9, 2018) (citing 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND

PROCEDURE § 1360 (3D ED. 2004)).  Further, "[t]he Fifth Circuit has implicitly approved 12(b)

motions arguing the lack of capacity to be sued." *Id*. (quoting *Angers ex rel. Angers v. Lafayette*

*Consol. Gov't,* 2007 WL 2908805, at *1 (W.D. La. Oct. 3, 2007) (citing *Darby v. Pasadena*

*Police Dep't*, 939 F.2d 311, 3114 (5th Cir. 1991))).

　　　Under Federal Rule of Civil Procedure 17(b), "capacity to sue or be sued shall be

determined by the law of the state in which the district court is held," i.e., Louisiana.  To enjoy

the capacity to be sued under Louisiana law, an entity must qualify as a "juridical person."

*Dejoie v. Medley*, 945 So.2d 968, 972 (La. App. 2d Cir.2006) (citations omitted).  This term is

defined by the Louisiana Civil Code as ". . . an entity to which the law attributes personality,

such as a corporation or partnership."  LA. CIV. CODE ART. 24.

　　　Defendant, Monroe Police Department, contends that it is a dependent agency of the City

of Monroe and has no authority separate and apart from the City.  *See* MONROE CITY

CHARTER § 3-01 (stating that mayor is the chief executive office of the City exercising all

control over departments); MONROE CITY CHARTER § 4-01 (stating that all departments are

under the direction of the mayor as established by the Charter); MONROE CITY CHARTER §

4- 04 (establishing the police department).  Furthermore, federal courts in this state regularly hold that city police departments are not juridical entities capable being sued.  *See Martin v. Davis,* No. 06-1770, 2007 WL 763653, at *2 (E.D. La. Mar. 8, 2007) ("Under Louisiana law, police departments are not juridical entities capable of suing or being sued"); *Walker v. Jackson Par. Dist. Attorney's Office*, No. 12-02978, 2013 WL 2424380, at *3 (W.D. La. June 3, 2013) (West Monroe Police Department); *Hicks v. Page*, No. 10-0084, 2010 WL 2243584, at *2 (W.D. La. Feb. 26, 2010), *R&R adopted,* 2010 WL 2246393 (W.D. La. May 28, 2010) (Shreveport Police Department).

Similarly, this court has held that Louisiana judicial district courts, and specifically, the 4th JDC is not a juridical entity capable of being sued.  *Dupree v. Fourth Judicial Dist. Court*, No. 12-1442, 2012 WL 5438955, at *2 (W.D. La. Sept. 24, 2012), *R&R adopted,* 2012 WL 5438948 (W.D. La. Nov. 7, 2012) (collecting cases); *Durden v. Bryson*, No. 17-0214, 2017 WL 4855437, at *2 (W.D. La. Sept. 26, 2017), *R&R adopted,* No. 17-0214, 2017 WL 4847783 (W.D. La. Oct. 25, 2017) (1st JDC).

Furthermore, although Defendants, Ouachita Parish Juvenile Court, Ouachita Correctional Center, and Ouachita Parish Sheriff's Department, have yet to appear in this matter, the court observes that these parties also are not juridical entities subject to suit.[20]  For example, juvenile courts in Louisiana are not entities that the law attributes personality, and thus, they lack

---

[20] The court possesses the inherent authority to dismiss a party sua sponte.  *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)); *McCoy v. Wade*, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (the report and recommendation itself provides adequate notice to the parties); *Thomas v. Texas Dept. of Family and Protective Services*, 427 Fed. Appx. 309 (5th Cir. 2011) (sua sponte dismissal on 11th Amendment grounds).

the capacity to be sued.  *Howard v. Lemmier*, No. 10-1814, 2011 WL 446569, at *3 (E.D. La.

Jan. 18, 2011), *R&R adopted in pertinent part, 2*011 WL 444857 (E.D. La. Feb. 2, 2011)

(discussing Jefferson Parish Juvenile Court); *Price v. Orleans Par. Sheriff's Office*, No. 15-5461,

2016 WL 6477035, at *2 (E.D. La. July 22, 2016), *R&R adopted,* 2016 WL 6441278 (E.D. La.

Nov. 1, 2016) (municipal courts).

Furthermore, courts uniformly hold that Louisiana sheriff's *offices* or sheriff's

*departments* (as opposed to the sheriff him or herself) are not juridical entities capable of being

sued.  *Sipes v. City of Monroe*, No. 11-1668, 2013 WL 1282457, at *3 (W.D. La. Mar. 28, 2013)

(collecting cases); *Price, supra.*

Finally, it is well-settled that the Ouachita Correctional Center is a parish corrections

facility comprised of buildings and grounds that is operated by the sheriff.  Consequently, it is

not an entity capable of being sued.  *Thomas v. Ouachita Corr. Ctr.*, No. 12-CV-0687, 2012 WL

1856514, at *5 (W.D. La. May 1, 2012), *R&R adopted,* No. 12-0687, 2012 WL 1855366 (W.D.

La. May 21, 2012); *see also Hicks, supra* (Caddo Correctional Center).

Accordingly, Defendants, Monroe Police Department, plus Ouachita Parish Juvenile

Court, Ouachita Correctional Center, and the Ouachita Parish Sheriff's Department, cannot be

sued and must be dismissed, with prejudice.  *See Darby*, *supra* (affirming district court's

dismissal of a defendant, with prejudice, because it could not be sued as an independent entity).[21]

b)    Merits-based Arguments

At this point of the opinion, the only remaining Defendants who were properly served

---

[21] In the event that Plaintiff were to properly serve Defendant, 4th JDC, then it too would be
subject to dismissal because it is not an entity capable of being sued.

and named are Walmart Stores, Inc. ("Walmart") and Bayou Pawn Shop.  However, Plaintiff's complaint fails to state any viable claim for relief against them.  The court reiterates that Richardson asserted federal claims under the FTCA, 28 U.S.C. §§ 2671, *et seq*., for breach of contract or quasi-contract as authorized by the Little Tucker Act, for delay/denial of a firearm purchase(s) ostensibly in violation of 18 U.S.C. § 922(s), and for violations of the SPEECH Act, 28 U.S.C. § 4101, *et seq*.

It is manifest, however, that Plaintiff's FTCA claims may not be asserted against any party other than the United States because the "only proper defendant to a tort claim under the FTCA is the United States." *Negron v. United States*, No. 19-5442, 2020 WL 5634304, at *4 (S.D.N.Y. Sept. 21, 2020) (citations omitted).[22]

Furthermore, the Little Tucker Act, 28 U.S.C. § 1346(a)(2), is a statute that provides the *federal* government's consent to suit for certain money-damages claims.  *United States v. Bormes*, 568 U.S. 6; 133 S.Ct. 12, 16–17 (2012).[23]  Clearly, with the exception of the FBI, the remaining defendants in this case are not the federal government or agencies thereof, and, thus, the Little Tucker Act does not apply to them.

With regard to the "SPEECH Act," the court observes that the statute provides, in

---

[22] Even if Plaintiff *were* to properly serve the FBI, his FTCA claim against the FBI for failure to correctly maintain his rap sheet, is properly characterized as a claim for "libel, slander [or] misrepresentation," which is explicitly excepted from the FTCA's waiver of sovereign immunity.  *See Alexander v. United States*, 787 F.2d 1349, 1350–51 (9th Cir.1986) (citing *inter alia*, 28 U.S.C. § 2680(h)).

[23]  The Little Tucker Act and its companion the Tucker Act, § 1491(a)(1), do not themselves "creat[e] substantive rights, but are simply jurisdictional provisions that operate to waive sovereign immunity for claims premised on other sources of law."  *Bormes, supra* (citations and internal quotation marks omitted).

pertinent part, that a domestic court shall not recognize a foreign judgment unless certain conditions are met. 28 U.S.C. § 4102. A foreign judgment means a final judgment rendered by a court, administrative body or other tribunal of a foreign country. 28 U.S.C. § 4101(3)-(4). Here, Plaintiff did not identify any foreign judgment within the meaning of the SPEECH Act. Accordingly, the Act's provisions are inapplicable.

Plaintiff continues to emphasize that he is entitled to relief under 18 U.S.C. § 922(s), which represents the interim provision of the Brady Handgun Violence Prevention Act of 1993's amendment to the Gun Control Act. By its unequivocal terms, however, § 922(s) expired 60 months after its enactment, i.e. by 1998. Accordingly, Plaintiff's repeated invocation of § 922(s) regarding an area's "chief law enforcement officer," and any duties owed under that section, proves erroneous and misguided. Instead, by 1998, the Attorney General established the FBI's National Instant Criminal Background Check System ("NICS"), as contemplated by 18 U.S.C. § 922(t). *See* 28 C.F.R. § 25.3. Plaintiff, however, had not alleged facts to show that remaining Defendants violated any requirement of § 922(t).

Also, as noted by Defendants, § 925A provides a remedy for the erroneous *denial* of a firearm:

> Any person *denied* a firearm pursuant to subsection (s) or (t) of section 922-
>
> (1) due to the provision of erroneous information relating to the person by any State or political subdivision thereof, or by the national instant criminal background check system established under section 103 of the Brady Handgun Violence Prevention Act; or
>
> (2) who was not prohibited from receipt of a firearm pursuant to subsection (g) or (n) of section 922,
>
> may bring an action against the State or political subdivision responsible for providing the erroneous information, or responsible for denying the transfer, or

31

against the United States, as the case may be, for an order directing that the erroneous information be corrected or that the transfer be approved, as the case may be. In any action under this section, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs.

18 U.S.C. § 925A.

By its terms, however, § 925A does not provide a remedy against a licensed firearms dealer. Furthermore, § 925A only provides redress where the firearms purchase was denied. In this case, Plaintiff attached a copy of a sales receipt to his complaint to show that his August 2019 purchase of a shotgun at Walmart was delayed, not denied. Similarly, he did not allege that his attempt to purchase a firearm at Bayou Pawn Shop was denied. Instead, he coyly and ambiguously stated, that the purchase was delayed/denied.[24]

When he filed suit, Plaintiff asked the court to exercise supplemental jurisdiction of his state law claims. However, from what the court is able to tell, Plaintiff did not allege or assert any grounds to support a state law claim against Walmart and/or Bayou Pawn Shop. The two most common sources for recovery under state law would be for breach of contract or a tort claim.

"Under Louisiana law, the essential elements of a breach of contract claim are '(1) the obligor's undertaking an obligation to perform; (2) the obligor failed to perform the obligation (the breach); and (3) the failure to perform resulted in damages to the obligee.'" *Grand Isle Shipyards, Inc. v. Black Elk Energy Offshore Operations, LLC*, No. 15-129, 2021 WL 674939, at

---

[24] Plaintiff's apparent inability to allege that his firearms purchases were denied has additional practical ramifications for his quest to determine the reason for the delayed purchase(s). Under the regulations, the NICS Audit Log for "open" and "allowed" firearms transactions are destroyed no more than 90 days after the date of inquiry. 28 C.F.R. § 25.9. Only NICS Audit Log records for "denied" transactions are maintained for ten years. *Id*. Here, Plaintiff is well beyond the 90-day retention period that governs delayed purchases.

*3 (E.D. La. Feb. 22, 2021) (citation omitted).  Here, however, Plaintiff did not allege any facts

to show that Defendants, Walmart and/or Bayou Pawn Shop, failed to perform any obligation

that they agreed to undertake in his favor.  Indeed, Plaintiff did not allege that either Defendant

promised to provide him with a firearm, regardless of any delays or denials inherent with the

mandatory background check.

Likewise, for purposes of a negligence claim, Louisiana courts employ a duty-risk

analysis. *Long v. State ex rel. Dept. of Transp. and Development*, 916 So.2d 87, 101 (La. 2005)

(citation omitted).  Under the duty-risk analysis, plaintiff must establish five elements:

> (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element).

*Id*.

In this case, Plaintiff did not allege any facts to show that Defendants, Walmart and

Bayou Pawn Shop, breached any duty of care that they owed to him.

In fact, in the wake of Defendants' motions, Plaintiff asserted that he was not

seeking damages against any Defendant.  Rather, he prayed for the court to order

Walmart and/or Bayou Pawn Shop to provide him with a copy of the report(s) that they

had received regarding his alleged criminal activity.  By regulation, however, the FBI's

responses to the NICS inquiry by a licensed firearms dealer do not contain any of the

underlying information in the records checked by the system.  28 C.F.R. § 25.6(c)(2).[25]

---

[25] The regulations contemplate a procedure for an individual to obtain the reason for the *denial* of a firearms purchase from the denial agency.  *See* 28 C.F.R. § 25.10.  Again, however, Plaintiff

Accordingly, even if Plaintiff were able to identify a theory of recovery to compel Walmart and Bayou Pawn Shop to disgorge the information he seeks, it is manifest that they do not possess it.

In sum, Plaintiff's complaint fails to state a claim for relief against Walmart and Bayou Pawn Shop.[26]

### Conclusion[27]

For the above assigned reasons,

IT IS ORDERED that Plaintiff's motions for reconsideration [doc. # 31] and for sanctions [doc. #s 38 & 44] are DENIED.[28]

IT IS RECOMMENDED that the motion to dismiss for lack of personal jurisdiction, for

---

never actually alleged that his attempt to purchase a firearm was denied.

[26] Having determined that Plaintiff fails to state a potentially viable claim for relief against Defendants, the court does not reach Defendants' alternative timeliness argument.

[27] In lieu of an expensive and time-consuming lawsuit, Plaintiff arguably would be better served by redoubling his efforts to obtain a copy of his FBI rap sheet. In that regard, Plaintiff is directed to the FBI's website that details the process, and even facilitates electronic filing. *See* https://www.fbi.gov/services/cjis/identity-history-summary-checks (last visited on March 8, 2021).

Moreover, to the extent that Plaintiff remains concerned about the disconnect between the fingerprint set that he purportedly obtained from the Ouachita Parish Sheriff's Office and the FBI's alleged rejection of same, it is worth noting that certain participating U.S. Post Office locations provide electronic fingerprinting services for this purpose. It appears that the closest participating postal facility is located in Jackson, MS. Once Plaintiff receives his rap sheet from the FBI, he then can review it to see whether it contains any inaccurate or incomplete information. If so, he may use the rap sheet to support a request to the specific agency or agencies that submitted any incorrect information to the FBI.

[28] As these motions are not excepted within 28 U.S.C. ' 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this order is issued under the authority thereof, and in accordance with the standing order of this court. Any appeal must be made to the district judge in accordance with Rule 72(a) and L.R. 74.1(W).

insufficiency of process, for insufficiency of service of process, and for failure to timely effect service [doc. # 63] filed by Defendant, U.S. Federal Bureau of Investigations, be GRANTED, and that Plaintiff's claims against said Defendant be DISMISSED, without prejudice. FED. R. CIV. P. 12(b)(2), (4), and/or (5).

IT IS FURTHER RECOMMENDED that the motion to dismiss for lack of subject matter jurisdiction, improper service, and for failure to state a claim upon which relief can be granted [doc. # 71] filed by Defendants, Fourth Judicial District Court and the Louisiana Department of Children & Family Services (named in the complaint, as "Child Support Payment Office") be GRANTED-IN-PART, and that Plaintiff's claims against said defendants be DISMISSED, without prejudice. FED. R. CIV. P. 12(b)(2), (4), and/or (5).

IT IS FURTHER RECOMMENDED that the motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 42] filed by Defendant, Monroe City Police Department, be GRANTED, and that Plaintiff's claims against said Defendant, plus Defendants, Ouachita Parish Juvenile Court, Ouachita Correctional Center, and Ouachita Parish Sheriff's Department, be DISMISSED, with prejudice. FED. R. CIV. P. 12(b)(6).

IT IS FURTHER RECOMMENDED that the motion to dismiss for failure to state a claim upon which relief can be granted and for judgment as a matter of law [doc. # 60] filed by Defendant, Bayou Pawn Shop, be GRANTED, and that Plaintiff's claims against said Defendant be DISMISSED, with prejudice. FED. R. CIV. P. 12(b)(6) and/or (c).

IT IS FURTHER RECOMMENDED that the motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 68] filed by Defendant, Walmart Stores, Inc., be GRANTED, and that Plaintiff's claims against said Defendant be DISMISSED, with prejudice.

FED. R. CIV. P. 12(b)(6).

Under the provisions of 28 U.S.C. '636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 15th day of March 2021.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE

36